UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | No. 2:15-cv-01882-MCE-DB |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| KEN ZIU THANG, et al., | |
| Defendants. | |

Plaintiff J & J Sports Productions, Inc., ("Plaintiff") brings this case against Defendants Ken Ziu Thang and Shannon Saetern, both individually and doing business as Spitzer's Walnut Room (the "Walnut Room") (collectively "Defendants"), alleging (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of California Business and Professions Code § 17200, et seq. Presently before the Court is Plaintiff's Motion for Partial Summary Judgment, seeking summary judgment of its claim under § 605, as well as its conversion claim. ECF No. 20. For the reasons that follow, Plaintiff's Motion is GRANTED.[1]

///

///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230.

1

# BACKGROUND[2]

At all times relevant to this action, Plaintiff had exclusive nationwide distribution rights to "'Mayhem' Floyd Mayweather, Jr. v. Marcos Rene Maidana II," a boxing program which aired on Saturday, September 13, 2014 ("the Program"). In accordance with those rights, Plaintiff entered into various sublicensing agreements with commercial establishments such as bars and restaurants pursuant to which it granted those establishments the rights to publicly broadcast the Program to their respective patrons. Plaintiff's rights included airing not only the main event but also the undercard bouts before the Program. Plaintiff's rights extended to all non-residential establishments, and all commercial establishments were therefore required to contract with Plaintiff for a license to legally air the Program. Defendants, however, aired the Program at the Walnut Room, their establishment, without Plaintiff's authorization.

On the evening the Program was scheduled to air, investigator Jennifer Eggert visited the Walnut Room. Eggert saw the Program displayed on two out of the three television sets in the bar and counted approximately 25 individuals inside the Walnut Room at the time. The maximum capacity of the Walnut Room is 49 people. Based on this number, Plaintiff would have charged Defendants $2,200 to show the Program in the bar. Defendants did not have a cover charge at the Walnut Room, but had a two-drink minimum in the bar that night.

Defendants do not dispute that they (1) showed the Program at the Walnut Room, (2) ordered the Program through "pay-per-view" satellite services on a residential Dish Network account in Defendant Ken Thang's name, and (3) did not pay Plaintiff a licensing fee to show the Program. Def.'s Resp. to Pl.'s Statement of Undisputed Facts, ECF No. 21-8, at 1-3. However, Defendants deny that they "intercepted" the Program. Id. at 2.

---

[2] Unless otherwise noted, the following recitation of facts is taken from Plaintiff's Motion for Partial Summary Judgment (ECF No. 20). They are undisputed.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

**ANALYSIS**

**A.    First Cause of Action: 47 U.S.C. § 605**

**1.    Walnut Room's Liability**

Section 605(a) provides, in relevant part, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Although § 605 did not originally address television signal piracy, "amendments made to the statute in the 1980's extended [its] reach to the unauthorized reception or interception of television programming." DirecTV, Inc. v. Webb, 545 F.3d 837, 843 (9th Cir. 2008). Further, § 605 is a strict liability statute, so the willfulness of a defendant's violation is irrelevant to determining liability, although damages may be reduced if "it is later found that defendant acted unknowingly." Joe Hand Promotions, Inc. v. Albright, No. CIV. 2:11-2260 WBS CMK, 2013 WL 2449500, at *4 (E.D. Cal. June 5, 2013). Circumstantial evidence of signal piracy is sufficient to establish a violation of § 605, and a plaintiff thus need not show the direct factual evidence of how signal piracy occurred in a specific case. Webb, 545 F.3d at 844 ("Signal piracy is by its nature a surreptitious venture and direct evidence of actual interception may understandably be hard to come by.").

Here, Plaintiff has produced sufficient evidence to meet its initial burden of establishing that Defendants violated § 605 by intercepting a satellite broadcast of the Program. It is undisputed that Plaintiff had the exclusive commercial distribution rights to the Program and that Defendants showed the Program at their establishment without receiving authorization from or paying the licensing fee to Plaintiff. Pl.'s Aff. (Ex. 1), ECF No. 20-2, at 1-2, 8-13. That circumstantial evidence is enough to establish a violation of § 605, and Defendants' willfulness, or lack thereof, is irrelevant to the Court's analysis.

Defendants argue that Plaintiff must provide evidence of the actual signal interception that occurred, but such direct proof is not necessary to show a violation of

§ 605. Webb, 545 F.3d at 844. The cases Defendants cite in support of this argument involve different circumstances, where, for example, courts found no "interception" because the defendants played a previously recorded VHS copy of the program made by a third party, Cablevision of Michigan, Inc., v. Sports Palace, 1994 U.S. App. LEXIS 13914 (5th Cir. June 5, 1994), or because the television company mistakenly charged the defendant the residential rate for a program when the defendant was otherwise properly listed as a commercial customer, J & J Sports Productions, Inc. v. Schmalz, 745 F. Supp. 2d 844 (S.D. Ohio, Sept. 17, 2010). Here, Defendants showed the Program in the Walnut Room at the same time it was first aired (as opposed to broadcasting a previously taped recording), and Defendant Ken Thang had opened a residential account with Dish Network and used that account to commercially broadcast the Program at his business establishment. Def.'s Decl. at 1-2 (ECF 21-1). Plaintiff has thus sufficiently established that Defendants "intercepted" the Program.

Defendants also raise a "good faith" defense to the § 605 claim, claiming they did not know they were violating any laws. But violating the statute is a strict liability offense—while a defendant's state of mind may be relevant to measuring damages, it is irrelevant for determining liability. Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293, 161 F. Supp. 3d 910 (E.D. Cal. Feb. 10, 2016).

Defendants have failed to establish the existence of a genuinely disputed factual issue as to Plaintiff's § 605 claim. Consequently, Plaintiff's Motion for Summary Judgment is GRANTED as to the first cause of action against the Walnut Room.

### 2. Defendants' Individual Liability

In order for Defendants to be held individually liable under § 605, Plaintiff must additionally show that the individual Defendants had a "'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." Joe Hand Promotions, Inc. v. Alvarado, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011) (quoting J & J Sports Productions, Inc. v. 291 Bar & Lounge, 648 F. Supp. 2d 469, 473 (E.D.N.Y. Aug. 19, 2009)). To meet this requirement, a plaintiff must establish that the

individual Defendants: "(1) [h]ad control over the television at the time of the alleged signal piracy; (2) [a]uthorized the violation; and (3) [d]erived a benefit from the alleged signal piracy." <u>Alvarado</u>, 2011 WL 1740536, at *7. Courts have found in similar situations that the following may be grounds for holding defendants individually liable: (1) the individual is a member of the LLC; (2) the individual is named on the establishment's liquor license; (3) the individual is responsible for other accounts for the business; and (4) the individual was present at the time of the alleged violation. <u>See, e.g.</u>, <u>J & J Sports v. Mikhael</u>, 2016 WL 2984191 (C.D. Cal. May 19, 2016) (holding the defendants individually liable when both were members of the LLC and one was also a registered agent); <u>Joe Hand Promotions, Inc. v. Tickle</u>, 2016 WL 393797 (M.D. Pa. Feb. 2, 2016) (holding defendant individually liable when defendant was both an officer of the LLC and a registrant on the establishment's liquor license). Further, courts generally acknowledge that an individual who owns an establishment and is a member of the LLC has a "direct financial interest" in a § 605 violation, simply because the "enhanced profits" attributable to showing the program in question are "directly related to the profits…Defendant himself [will] reap on a given night." <u>Tickle</u>, 2016 WL 393797, at *14.

Here, it is undisputed that both Ken Thang and Shannon Saetern are named members of the Walnut Room LLC; both are registrants on the Walnut Room's liquor license; the utility and Dish Network accounts for the establishment are in Thang's name alone; and Saetern was physically present in the Walnut Room at the time the Program was shown. Decl. Thomas P. Riley, Exs. 3-5 (ECF 20-2); Defs.' Resp. Interrog. No. 4 (ECF 20-2). The Court finds these facts sufficient to establish individual liability for both Thang and Saetern under the circumstances of this case.

Because there are no genuine issues of material fact in dispute, the Court finds summary judgment with respect to Defendants' individual liability under § 605 to be

///

///

appropriate, and Plaintiff's Motion for Summary Judgment is GRANTED with respect to the individual liability of Defendants under § 605.[3]

### B. Third Cause of Action: Conversion

Plaintiff also moves for summary judgment of its conversion claim. To show conversion, a plaintiff must prove three elements: "(1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." Tyrone Pac. International, Inc., v. MV Eurychili, 658 F.2d 664, 666 (9th Cir. 1981). Conversion is also a strict liability claim, and a defendant's state of mind is therefore irrelevant in determining liability.

Plaintiff must first establish that it had a property interest sufficient to satisfy the first element. The "right to distribute programming via satellite" is a recognized property interest for conversion claims. DirecTV, Inc., v. Pahnke, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. Dec. 12, 2005). Plaintiff has established that it had the exclusive right to distribute the Program in commercial establishments like Defendants' Walnut Room, so this first element of the conversion cause of action is satisfied.

Next, Plaintiff must establish Defendants' conversion of that property right by a wrongful act. Plaintiff has shown that Defendants aired the Program without Plaintiff's authorization, which is sufficient to prove this second element. Roseville Lodge No. 1293, 161 F. Supp. 3d at 917.

Finally, Plaintiff must show that it suffered damages as a result of Defendants' conversion. It is undisputed that Plaintiff charged a fixed fee to each commercial establishment to lawfully air the Program, and thus Defendants deprived Plaintiff of the

---

[3] Plaintiff also alleges that Defendants' airing of the Program violated 47 U.S.C. § 553. Section 553 prohibits signal interception of cable broadcasts, while § 605 prohibits signal interception of satellite broadcasts. A defendant cannot violate both statutes by one "act of interception," but rather can only violate one or the other, depending on the type of broadcast involved. J & J Sports Productions, Inc. v. Manzano, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008). Here, the undisputed evidence indicates that Defendant intercepted a satellite broadcast, not a cable signal. It is unclear to the Court whether Plaintiff intends to move for summary judgment of its § 553 claim but, to the extent it does, the motion is DENIED.

commercial license fee by wrongfully showing the Program without paying Plaintiff that fee. Therefore, the final element of conversion is satisfied.

Because there is no genuine issue of material fact as to any element of Plaintiff's conversion claim, Plaintiff's Motion is GRANTED as to the third cause of action.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED as to the issue of liability with regard to Plaintiff's first and third causes of action, including as against Defendants Ken Thang and Shannon Saetern individually.

Plaintiff has not specified a desired amount of damages, and Defendants argue for minimal damages, if any. Section 605 provides that the aggrieved party may recover "statutory damages for each violation…in a sum not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).[4] Additional damages may be recoverable for the conversion claim as well. See Joe Hand Promo., 161 F. Supp. 3d at 917-18. Plaintiff is ordered to submit additional briefing on the issue of damages not later than twenty (20) days following the date this Memorandum and Order is electronically filed. Defendants may, but are not required to, respond to Plaintiff's brief not later than fourteen (14) days after it is filed.

IT IS SO ORDERED.

Dated: January 29, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[4] Courts often consider factors including the number of patrons present in the establishment when the defendant aired the program, the capacity of the establishment, whether there was a cover charge or a similar minimum drink requirement in effect at the time, and whether the defendant has previously violated the statute. Albright, 2013 WL 2449500, at *6.

9